

ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC 10 2018

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| THE HANOVER INSURANCE COMPANY, | § § § | |
| Plaintiffs, | § § | |
| v. | § § § | Civil Action No. 4:18-cv-832-A |
| ORYX OILFIELD HOLDINGS, LLC, KODIAK TRENCHING AND BORING, LLC, KODIAK RENTAL AND SUPPLY, LLC, KODIAK TESTING, LLC, ORYX OILFIELD SERVICES, LLC, KODIAK EXCAVATION AND UTILITIES, LLC, MATTHEW J. MAHONE, and LEIGH ANNE MAHONE, | § § § § § § § § § § | |
| Defendants. | § § | |

## JOINT STATUS REPORT

Plaintiff The Hanover Insurance Company ("Hanover") and Defendants Oryx Oilfield Holdings, LLC, Kodiak Trenching and Boring, LLC, Kodiak Rental and Supply, LLC, Kodiak Testing, LLC, Oryx Oilfield Services, LLC, Kodiak Excavation and Utilities, LLC, Matthew J. Mahone, and Leigh Anne Mahone (collectively referred to as the "Indemnitors") (together, Hanover and the Indemnitors are the "Parties"), by and through their counsel of record, hereby submit this Joint Status Report to comply with the Court's Status Report Order dated November 9, 2018 (the "Order"). Pursuant to the Order, this Joint Status Report also complies with the requirements of FED. R. CIV. P. 26(f). The Parties state as follows:

1.    **A brief statement of the nature of the case, including the contentions of the parties.**

This is a case between a surety (Hanover) and its indemnitors (the Indemnitors) arising from an indemnity agreement executed by the Indemnitors, surety bonds issued by Hanover on several construction projects, and payments made by Hanover relating to the construction projects. Hanover has asserted seven causes of action including: (1) Money Had and Received; (2) Breach of Indemnity Agreement; (3) Common Law Indemnification; (4) Breach of Fiduciary Duty; (5) Exoneration; (6) Attorneys' Fees; and (7) Costs and Interest. All claims are currently pending before the Court. The Indemnitors have raised defenses to Hanover's claims including contending that Hanover issued certain bonds without authority, and without the knowledge and consent of, the applicable Indemnitor named as principal on the bond, and that Hanover failed to provide financial assistance to Kodiak Trenching and Boring, LLC and Kodiak Excavation and Utilities, LLC in accordance with their alleged agreement.

2.    **Any challenge to jurisdiction or venue.**

None.

3.    **Any pending motions (including the dates of filing of motions and responses), an estimate of time needed to file any contemplated motions and a description of anticipated motions.**

Hanover currently has a pending application for a preliminary injunction and other equitable relief. Hanover has asked the Court in its application to enjoin the Indemnitors from: (1) failing to preserve assets; and (2) hiding or otherwise destroying evidence that may relate to the business of the Indemnitors. Furthermore, Hanover has asked the Court to enforce certain provisions of the Indemnity Agreement and order the Indemnitors to: (1) allow Hanover to inspect their books and records including providing

an accounting of all contract funds received by the Indemnitors after transmission of the

Letters of Direction; and (2) within ten (10) days after the issuance of an order deposit a

sum of $7,400,000 in cash or its equivalent as collateral. However, in the event the case

is temporarily stayed as requested by the Parties, Hanover does not seek an immediate

hearing on such request for equitable relief but reserves the right to so in the future.

In the event the Parties are unable to resolve their dispute through the process

the Parties have discussed (described further herein), Hanover anticipates it will file a

motion for summary judgment after conducting initial discovery seeking summary

judgment on all its claims arising from the indemnity agreement.

To the extent the Court would like a formal motion to stay this case until March

15, 2019, as opposed to the agreement of the parties herein, then an agreed motion to

stay will be filed.

**4.** **Any matters which require a conference with the Court.**

None.

**5.** **Likelihood that other parties will be joined, identities of potential parties and an estimate of the time needed for joinder of such parties.**

At this time, Hanover does not anticipate joinder of any additional parties.

**6.** **Requested trial date, estimated length of trial, and whether jury has been demanded.**

The Parties request a trial date in March 2020. The Parties estimate they will

need five (5) days for trial. No jury has been demanded.

**7.     A report concerning the settlement conference and related settlement matters as contemplated by this order.**

**A.     State when the parties participated in the settlement conference and the persons who were present, including the capacity of the representatives who were present.**

The Parties participated in a settlement conference on Friday, November 30, 2018. For Hanover, the following individuals were in attendance:

- Christopher R. Ward, lead counsel for Hanover; and

- Joe Brenstrom, Lead Surety Claim Representative for Hanover.

For the Indemnitors, the following individuals were in attendance.

- J.P. Vogel, Gene Besen and Russell E. Jumper, counsel for the Indemnitors;

- Matthew J. Mahone, managing member of Oryx Oilfield Holdings, LLC, Kodiak Trenching and Boring, LLC, Kodiak Rental and Supply, LLC, Kodiak Testing, LLC, Oryx Oilfield Services, LLC, and Kodiak Excavation and Utilities, LLC;

- Leigh Anne Mahone; and

- Bobby Barwick, Darren Miles, and James Lary, of Oryx Oilfield Services, LLC, attended a portion of the meeting to assist in communications regarding one aspect of potential settlement.

**B.     State whether meaningful progress toward settlement was made.**

Although a final settlement was not reached during the settlement conference, the Parties made meaningful progress identifying issues in dispute and formulating a process to increase the likelihood of a settlement in the future. The process agreed upon by the Parties at their conference is centered on allowing the Indemnitors to

complete the remaining bonded projects underlying Hanover's claims. This will allow the Indemnitors to focus their resources and efforts on completing those projects, without simultaneously having to contend with this litigation and its associated litigation costs. Furthermore, Hanover's overall claimed loss cannot be fully determined until the Indemnitors complete all of the bonded projects. By allowing the Indemnitors to complete those projects, and by avoiding incurring immediate litigation costs, the Parties believe they can make progress toward potentially resolving the entire dispute in the future, but at the very least may be able to resolve certain identifiable issues in dispute and limit the issues to be tried. The parties also made progress on how they could exchange information that could help future settlement discussions.

To facilitate this process agreed upon by the Parties, the Parties agreed to ask the Court to stay this proceeding until March 15, 2019. Should such stay be granted by the Court, the Parties have agreed that the deadline to amend their respective pleadings and bring any other claims would similarly be tolled until March 29, 2019. To allow time for the Court's consideration of the request for stay, Hanover consented to Defendants' filing an amended answer pursuant to FED. R. CIV. P. 15, which answer may include counterclaims, on or before January 11, 2019. In the event Hanover or the Indemnitors decide to restart this litigation prior to March 15, 2019, the Parties have agreed they can do so by providing five (5) days' written notice to the opposing party then providing notice to the Court requesting the Court lift the stay. Assuming no party has already sought to lift the stay before March 15, 2019, the Parties have also agreed they will attend mediation on or before March 15, 2019, to again attempt to resolve this dispute or portions of this dispute before fully restarting this litigation.

**C.      Provide a statement regarding the prospects of settlement.**

It is unclear at this time whether settlement will be reached in this case, but the

Parties believe the prospects of such a settlement will be increased by staying this

proceeding until March 15, 2019, to allow the Indemnitors the opportunity to complete

the remaining bonded projects.

**8.      A discovery plan as contemplated by Rule 26(f)(3) of the Federal Rules of Civil Procedure.**

**A.      What changes should be made in the timing, form, or requirement for disclosures under 26(a), including a statement of when initial disclosures were made or will be made:**

The Parties stipulate pursuant to FED. R. CIV. P. 26(a)(1)(C) that their Initial

Disclosures shall be due within 14 days after this case resumes following a stay.

Otherwise, should the Court deny the Parties' request to stay this case, the Parties

stipulate pursuant to FED. R. CIV. P. 26(a)(1)(C) that their Initial Disclosures shall be due

14 days after the hearing, conference, or other setting where the Court denies the

Parties' request to stay this case.

**B.      The subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues:**

The Parties anticipate discovery will be needed on the essential elements of

Hanover's claims and the basis for the Indemnitors' defenses to those claims. Should

future claims or defenses be asserted, the Parties anticipate they will need to conduct

discovery on those issues as well. In light of the Parties' request that this case be

stayed until March 15, 2019, the Parties suggest that discovery should be completed on

or before Monday December 23, 2019. At this point in time, the Parties do not anticipate

that phased discovery will be needed and do not currently think discovery needs to be

limited or focused beyond the requirements already set in the Federal Rules of Civil Procedure and Federal Rules of Evidence.

**C.    Any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced:**

The Parties agree that when producing documents originating from ESI, care should be taken to ensure that the production provides the receiving party with a reasonable ability to search and filter the documents based on the text and metadata that was available in the ordinary course of business. The detailed production format outlined below is an industry standard format and is preferred. The fact that images of documents are produced means that documents can be numbered and the number can be permanently "endorsed" onto the image. Native files are requested and produced for specified file types such as spreadsheets or database files where a review of the image is not helpful. If good cause exists to request production of certain files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. A party is required to produce only a single copy of a responsive document and a party shall make best reasonable efforts to de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across Custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. A party may also de-duplicate "near-duplicate" email threads as follows: In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate." To the extent that de-duplication through MD5 or

SHA-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de- duplication. Finally, industry standard load files shall be included that provide metadata for sorting the documents based on senders, dates, etc., and the text extracted from the ESI is provided for full content searching. Below is the specific protocol agreed upon by the Parties:

- Emails, should be produced as single page tiff image files (JPEG is fine for color documents) and named per sequential production numbers. E.g., PR000001.tif.

- Attachments should be produced as single page tiff image files (JPEG is fine for color documents) and named per sequential production numbers following their parent email. E.g., PR000002.tif.

- Documents that exist only in hard copy format shall be scanned and produced as single page Group IV TIFFs, with at least 300 dots per inch (dpi). Each TIFF image shall be named according to a unique corresponding bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon Confidentiality designation. TIFFs shall show all text and images that would be visible to a user of the hard copy documents. The parties will accommodate reasonable requests for production of specific images in color. In scanning hard copy documents, distinct documents should

not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, hard copy documents should be logically unitized). The parties will use reasonable efforts to unitize documents correctly.

- A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. OCR text shall be provided as a single multi-page text file for each document, and the filename should match its respective TIFF filename. The text files will not contain the redacted portions of the documents.

- Electronic files should be produced as single page TIFF image files (JPEG is fine for color documents) and named per sequential production numbers. E.g., PR000003.tif.

- If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata.

- The extracted text from the native files should be produced in document level text files using the same naming scheme as the file from which the text was extracted ex. PR000001.txt.

- All produced images should be endorsed with the production "Bates number" and "Confidentiality designation" and delivered in a unique folder preferably named based on the production date (E.g., PR20170417). Subfolders (001, 002 etc.) should be utilized to keep the number of files per folder under 1000 files.

- Microsoft Access files, Excel files, media files and any Documents with embedded formulas should be produced natively with an image placeholder for the next Bates number and Confidentiality designation. The native file version should use the same naming convention as the other tiff image files. So an excel spreadsheet would produce as: PR000004 Confidential.xlsx.

- A delimited text file should be produced which contains metadata extracted from the native files and cross referenced to the beginning production number used to name the image files. Data provided should include but is not limited to the following:

  o   Begdoc#

  o   Enddoc#

  o   Begattach#

  o   Endattach#

  o   Email Subject

- Date sent
- Date received
- Time Sent
- Time Received
- To (Display Name)
- From (Display name)
- Cc (Display name)
- Bcc (Display name)
- To (EMAIL ADDRESS)
- FROM (EMAIL ADDRESS)
- CC (EMAIL ADDRESS)
- BCC (EMAIL ADDRESS)
- Filename
- Author
- Company
- Date created
- Date modified
- File extension
- Original Folder
- Md5hash
- Custodian
- Native file path
- Text File path

- o   Confidentiality

- o   Volume

- o   Pages

- o   Message ID

- o   References

- o   Redacted

- An image load file should be produced in .LFP, .DII or .OPT format to load the single page tiff images. The image load file should do the following:

  - o   Accurately define the document breaks that existed in the native files prior to converting them to tiff image format for production.

  - o   Establish Parent/child relationships in the case of email.

  - o   Contain accurate path information based on the folder structure containing the produced images.

**D.     Any issues about claims of privilege or protection as trial-preparation materials, including—if the parties agree on a procedure to assert these claims after production—whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502.**

None.

**E.     What changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed.**

None.

      **F.**    **Any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).**

None.

      **9.**    **Any other matters relevant to the status and disposition of this case.**

The parties do not have any other particular matters relevant to the status and disposition of this case except to the extent the Court requires additional discussion relating to the proposed stay. Furthermore, the Parties ask the Court to set a schedule now incorporating the timing of the stay to establish efficiency in this case moving forward when/if the stay is lifted and to eliminate the need to address it later with the Court.

Dated this __10__ day of December, 2018.

Respectfully submitted,

CHRISTOPHER R. WARD
Texas State Bar No. 24008233
christopher.ward@clarkhillstrasburger.com
PHILLIP W. PEMBERTON
Texas State Bar No. 24107892
phil.pemberton@clarkhillstrasburger.com
CLARK HILL STRASBURGER
2600 Dallas Parkway, Suite 600
Frisco, Texas 75034
Telephone:   (214) 651-4722
Facsimile:   (214) 659-4108

ATTORNEYS FOR PLAINTIFF
THE HANOVER INSURANCE COMPANY

J.P. B. VOGEL
Texas State Bar No. 24039910
jpvogel@grayreed.com
GENE R. BESEN
Texas State Bar No. 24045491
gbesen@grayreed.com
RUSSELL E. JUMPER
Texas State Bar No. 24050168
rjumper@grayreed.com
GRAY REED & MCGRAW LLP
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Direct:       (214) 954-4135
Facsimile:   (214) 953-1332
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on this _l0_ day of December, 2018, I filed the foregoing document with the Clerk of the Court for the U.S. District Court for the Northern District of Texas via hand-delivery and served a copy of the document to all counsel of record via email transmission pursuant to the Federal Rules of Civil Procedure:

J.P. B. VOGEL
jpvogel@grayreed.com
GENE R. BESEN
gbesen@grayreed.com
RUSSELL E. JUMPER
rjumper@grayreed.com
GRAY REED & MCGRAW LLP
1601 Elm Street, Suite 4600
Dallas, Texas 75201

ATTORNEYS FOR DEFENDANTS

Christopher R. Ward