

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

THE HANOVER INSURANCE COMPANY, §
§
      Plaintiff, §
§
VS. § NO. 4:18-CV-832-A
§
ORYX OILFIELD HOLDINGS, LLC, §
ET AL., §
§
      Defendants. §

## MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of plaintiff, The Hanover Insurance Company, for partial summary judgment. The court, having considered the motion, the response of defendants, Oryx Oilfield Holdings, LLC ("Holdings"), Kodiak Trenching and Boring, LLC ("KTB"), Kodiak Rental and Supply, LLC ("Rental"), Kodiak Testing, LLC ("Testing"), Oryx Oilfield Services, LLC ("Oryx"), Kodiak Excavation and Utilities, LLC ("KEU"), Matthew J. Mahone ("Mahone"), and Leigh Anne Mahone, the reply, the record, and applicable authorities, finds that the motion should be granted.

I.

### The Operative Pleadings

Plaintiff's operative pleading is its second amended complaint filed October 30, 2019. Doc.[1] 88. Plaintiff's claims

---

[1] The "Doc. __" reference is to the number of the item on the docket in this action.

arise out of an indemnity agreement pursuant to which defendants agreed to indemnify plaintiff as consideration for the issuance of certain surety bonds by plaintiff on their behalf. In addition, claims arise out of monies plaintiff advanced pursuant to requests for financial assistance for KTB and KEU. Plaintiff says that it has expended more than $5 million for which it seeks reimbursement. Plaintiff asserts claims for breach of contract, breach of fiduciary duty, exoneration, and fraud. And, plaintiff seeks to recover attorneys' fees and costs, and to obtain an accounting and specific performance of the indemnity agreement.

On June 13, 2019, defendants Oryx, KTB, KEU, and Mahone filed their first amended counterclaim. Doc. 49. In it they allege:

In March 2014, Holdings hired Timothy Crawford ("Crawford") as assistant director of business development. Doc. 49 ¶ 2. As part of his duties, Crawford was involved in managing various construction projects for KTB and KEU. Id. ¶ 3. Crawford knew that only Mahone was authorized to execute and approve bonds for KTB and KEU. Id. ¶ 4. Nevertheless, Crawford ordered and executed bonds. Id. ¶ 5. In the fourth quarter of 2015, Mahone learned that Crawford had secured and/or bid on projects in excess of what KTB and KEU could perform. Id. ¶ 9. He also learned that Crawford had obtained bonds from plaintiff. Id. Mahone instructed

Crawford not to bid on any new projects or order any bonds without authorization. Id. Mahone also informed certain employees of plaintiff that Crawford was not authorized to request bonds and that KTB and KEU were at capacity and could not take on more work. Id. Crawford continued to submit bids and order bonds. Id. ¶ 10. In May 2016, Mahone discovered that Crawford had committed KTB and KEU to a substantial number of projects for which plaintiff had issued over $40 million in performance bonds. Id. ¶ 11. In June 2016, Mahone again notified plaintiff that Crawford was not authorized to request or execute bonds. Id. ¶ 13. Plaintiff continued to issue bonds at Crawford's request. Id. ¶ 14. In the summer of 2016, Mahone requested bonds but plaintiff refused to provide them without audited financial statements. Id. ¶ 16. Plaintiff continued to issue bonds at Crawford's request. Id. ¶ 17. KTB and KEU were not equipped to handle the project load and financial burden imposed by the existence of bid bonds. Id. ¶ 20. Mahone showed plaintiff that there was a way for KTB and KEU to complete work. Id. ¶ 21. Plaintiff proposed a written agreement whereby it would provide financial assistance. Id. ¶ 22. Defendants made a counter-proposal. Id. At a meeting in September 2017, the parties reached an oral agreement pursuant to which plaintiff would advance funds to pay KTB and KEU's accounts payable in exchange for execution by KTB and KEU of letters of

direction, directing project owners to pay project funds into a special account controlled by plaintiff (the "Oral Agreement"). Id. ¶¶ 23-27. KTB and KEU executed letters of direction that plaintiff requested; however, plaintiff failed to advance funds as promised. Id. ¶¶ 28-31. Oryx was forced to inject capital so that KTB and KEU could keep working. Id. ¶ 32. Plaintiff failed to pay Oryx as promised for work it performed. Id. ¶ 33. Mahone was forced to incur personal debt to fund the continued operations. Id.

Counterclaimants assert claims for breach of the Oral Agreement, fraudulent inducement, money had and received, negligent misrepresentation, fraudulent misrepresentation, and knowing breach of fiduciary duty. They also seek exemplary damages and attorney's fees.

II.

Grounds of Plaintiff's Motion

Plaintiff seeks judgment on its own breach of contract claim against defendants. Doc. 69. It also seeks judgment that defendants take nothing on their counterclaim. Id.

III.

## Applicable Summary Judgment Principles

The applicable summary judgment principles were set forth in the court's memorandum opinion and order signed November 22, 2019, and need not be repeated here.

IV.

## Undisputed Facts

The record establishes the following undisputed facts:

On December 9, 2014, defendants Holdings, KTB, Rental, Testing, Services, Mahone, and Mrs. Mahone signed a General Agreement of Indemnity in favor of plaintiff as surety. Doc. 89, Ex. A. On November 16, 2015, Mahone and plaintiff executed Amendment No. 1 to General Agreement of Indemnity whereby defendant KEU was added to the indemnity agreement as a principal and indemnitor. Id., Ex. B. (The court hereinafter refers to the two documents as the "Indemnity Agreement.") The Indemnity Agreement provides, in pertinent part:

> In the event of any payment by the Surety, an itemized statement of the amount of any such payment sworn to by any officer or authorized representative of the Surety, or any voucher or vouchers, invoices or other evidence of such payment shall be *prima facie* evidence of the fact and the amount of such payment, and the extent of the liability of the Indemnitors to the Surety, and, in the absence of actual fraud or bad faith amounting to dishonesty or malicious conduct, shall be final, conclusive and binding upon the Indemnitors in any claim, suit or other proceeding by the Surety to

recover the amount of such payments pursuant to this
Agreement or otherwise.

Id., App. 6. Plaintiff issued a number of bonds benefitting defendants. See, e.g., Doc. 74, App. 48-52; Doc. 78, App. 1825. Defendants paid the premiums and benefitted from the issuance of the bonds.[2] Doc. 74, App. 22.

In the summer of 2017, Mahone told plaintiff that defendants were suffering from financial difficulties and needed financial assistance to complete projects. Doc. 74, App. 14; Doc. 92, App. 10. The parties met on September 14, 2017, to discuss proposed terms for plaintiff to provide financial assistance. Doc. 74, App. 16; Doc. 92, App. 10-11. Following the meeting, counsel for defendants emailed counsel for plaintiff requesting "the latest version of the proposed agreement" so that he could mark it up. Doc. 74, App. 17, App. 91. Plaintiff's counsel sent the proposed agreement but received no response from defendants. Id., App. 18, App. 93.

On October 12, 2017, plaintiff emailed Mahone, saying that defendants would need to formally request financial assistance using the form plaintiff suggested. Doc. 74, App. 18, App. 95. The email reminded Mahone that plaintiff had not made a promise

---

[2] Although defendants maintain that Crawford did not have authority to request or obtain some of the bonds, the summary judgment evidence establishes that the bonds were issued; that defendants paid the premiums; and that defendants benefitted from the issuance of the bonds and became liable to indemnify plaintiff pursuant to the terms of the Indemnity Agreement.

or commitment to provide financial assistance. Id. Mahone did not contradict the statement. Id., App. 18-19. Defendants executed the formal requests, acknowledging the issuance of bonds by plaintiff on their behalf, Id., App. 19, App. 97-100, App. 107-09, and plaintiff paid numerous subcontractors, suppliers, and other vendors on various projects. Id., App. 20.

Plaintiff has paid losses, costs, and expenses in the amount of $1,095,736.87 as of September 25, 2019, all reasonable, necessary, and advisable. Doc. 74, App. 21. Plaintiff has incurred but not paid $413,247.27 in additional attorney's fees and costs. Id., App. 21, App. 211. Plaintiff remains exposed to additional losses, costs, and expenses and has deemed that $4,500,000 is sufficient to indemnify and hold it harmless from claims that have arisen or may arise on the bonds. Id., App. 21-22.

*****

Additional undisputed facts are mentioned at appropriate places under the Analysis heading.

V.

Analysis

A. Breach of the Indemnity Agreement

To establish breach of contract, plaintiff must show (1) the existence of a valid, enforceable contract between the parties,

7

(2) plaintiff's performance or tender of performance thereunder, (3) breach by defendants, and (4) damages to plaintiff as a result. Smith Int'l, Inc. v. Egle Group, LLC, 490 F.3d 380, 387 (5th Cir. 2007). An indemnity agreement is interpreted as any other contract; the court is to ascertain and give effect to the intentions of the parties as expressed therein. Ideal Lease Serv., Inc. v. Amoco Prod. Co., 622 S.W.2d 951, 953 (Tex. 1983). Where the terms are clear and unambiguous, construction is a question of law. Heritage Resources, Inc. v. Nationsbank, 939 S.W.2d 118, 126 (Tex. 1996).

Here, the Indemnity Agreement gives plaintiff the exclusive right to adjust, settle, or compromise any claims, demand, suit, or any other proceeding arising out of any bonds and to take whatever actions it deems appropriate. Doc. 89, App. 5. Such agreements are routinely enforced. Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 284 (Tex. 1998); Old Republic Sur. Co. v. Palmer, 5 S.W.3d 357 (Tex. App.-Texarkana 1999, no pet). Further, the "prima facie evidence" clause creates a presumption in favor of plaintiff regarding the propriety and amount of payments for which it seeks indemnity. Travelers Cas. & Sur. Co. of Am. v. James, No. 3:15-CV-1999-N, 2016 WL 9306254, at *6 (N.D. Tex. Oct. 5, 2016); United States Fire Ins. Co. v. Rey-Bach, Inc., No. 3:02-CV-2133-K, 2004 WL 1836314, at *2 (N.D. Tex.

8

Aug. 16, 2004). In this case, defendants have not shown, or attempted to show, any fraud on the part of plaintiff in settling claims or making payments.

Defendants focus on the argument that Crawford had no authority to request or obtain the issuance of bonds. Doc. 91 at 10-18. The contention that defendants did not ratify the bonds is belied by the record, including the requests for financial assistance signed October 18 and 19, 2017. Doc. 74, App. 97-100, App. 107-09. And, in any event, the argument is overcome by the "prima facie evidence" provision. See Fid. & Dep. Co. v. Tri-Lam Co., No. SA-06-CA-207-XR, 2007 WL 1452632, at *5 (W.D. Tex. May 15, 2007)(issue of potential liability on bonds immaterial where surety has the right to settle claims). The court further notes that the Indemnity Agreement provides that it applies to bonds written by the surety "at the request of or on behalf of" defendants. Doc. 89, App. 9 ¶ 25. Clearly, the bonds were issued on behalf of defendants, whether the formal request was authorized or not, and defendants accepted the benefits of those bonds. Smith v. Michels Corp., No. 2:13-CV-00185-JRG, 2014 WL 708416, at *2 (E.D. Tex. Feb. 24, 2014); Miller v. Kennedy & Minshew, P.C., 142 S.W.3d 325, 343 (Tex. App.--Fort Worth 2003, pet. denied)(ratification through knowingly accepting benefits). See also Land Title of Dallas, Inc. v. F.M. Stigler, Inc., 609

S.W.2d 754, 757-58 (Tex. 1980)(principal cannot ratify only the part of the agent's unauthorized acts that benefit it and not the rest).

Finally, defendants have not come forward with summary judgment evidence to establish a genuine fact issue as to the propriety of the amounts sought by plaintiff.[3] Accordingly, plaintiff is entitled to recover the $1,508,984.14 for losses paid and expenses incurred through September 25, 2019, as well as payment of $4,500,000 pursuant paragraph 3 of the Agreement, to be applied to losses and expenses incurred thereafter.

B.  The Counterclaim

Counterclaimants assert six claims against plaintiff. The first, breach of contract, and the second, fraudulent inducement, arise out of the Oral Agreement for plaintiff to provide financial assistance to KTB and KEU. The remaining claims arise out of the argument that plaintiff had no authority to issue bonds unless certain conditions were met. Doc. 49.

The elements of breach of contract are set forth, <u>supra</u> at 7-8. Fraudulent inducement is a species of fraud that arises only in the context of a contract and requires existence of a contract

---

[3] Defendants maintain that plaintiff has failed to submit competent summary judgment evidence, Doc. 91 at 6, overlooking the plain language of the Indemnity Agreement, including the "prima facie" evidence provision. In any event, the court routinely gives summary judgment evidence whatever weight it may deserve.

as part of its proof. IAS Servs. Group, L.L.C. v. Jim Buckley & Assocs., Inc., 900 F.3d 640, 647 (5th Cir. 2018). The party seeking relief must show (1) the other party made a material misrepresentation, (2) the representation was false and was either known to be false when made or was made without knowledge of the truth, (3) the representation was intended to be and was relied upon by the injured party, and (4) the injury complained of was caused by the reliance. Id.

Plaintiff contends that counterclaimants cannot prevail on Count I or Count II of the counterclaim for several reasons. First, they cannot establish the existence of the Oral Agreement. Second, the Oral Agreement is barred by the Statute of Frauds. Third, counterclaimants are estopped from asserting an alleged oral, handshake deal. And, fourth, counterclaimants cannot establish damages as a matter of law. Doc. 70 at 17-33.

Plaintiff first argues that counterclaimants cannot establish that the parties entered into the Oral Agreement. The court agrees. The plain language of the Indemnity Agreement says that plaintiff has the absolute right to cease making or guaranteeing advances or loans at any time. Doc. 89, App. 6, ¶ 4. Further, the Indemnity Agreement states that it may not be changed or modified orally. Id., App. 10, ¶ 28. Counterclaimants say that the Oral Agreement was entered into at a meeting on

September 14, 2017; however, after that meeting, on September 18, 2017, defendants' attorney emailed plaintiff's counsel to ask for "your latest version of the proposed agreement." Doc. 74, App. 91. The subject of the message was "Word Version of Latest Draft of Proposed Agreement." Id. Obviously, the agreement for financial assistance was still being negotiated. On October 12, 2017, not having heard anything further from defendants, plaintiff emailed Mahone regarding the request for financial assistance, instructing that a written request would be needed, noting that plaintiff was considering financial assistance and had not made any promise or commitment in that regard. Id., App. 18, App. 95. In response, on October 18 and 19, KTB and KEU executed requests for financial assistance, each providing (in bold type) that it and indemnitors understood and acknowledged that plaintiff had made no agreements or promises to provide financial assistance and had the sole discretion to decide whether and to what extent to do so. Id., App. 98, App. 108. In addition, in November 2017, Oryx made seven separate claims against plaintiff on various bonds, id., App. 20, 111-84, which would not have been necessary if plaintiff was obligated to directly pay the debts of KTB and KEU pursuant to the Oral Agreement. Thus, defendants' own actions show that no oral

agreement had been reached.[4] They also establish that defendants waived the right to claim that an enforceable oral agreement had been reached. Addicks Servs., Inc. v. GGP-Bridgeland, LP, 596 F.3d 286, 298 (5th Cir. 2010)(waiver is intentional relinquishment of a known right or intentional conduct inconsistent with that right).[5]

Plaintiff next argues that the remainder of the claims asserted by counterclaimants-Count III (money had and received), Count IV (negligent misrepresentation), Count V (fraudulent misrepresentation), and Count VI (knowing breach of fiduciary duty)-fail as a matter of law because defendants ratified the issuance of the allegedly unauthorized bonds and/or are estopped from taking the position that the bonds were not validly issued. Doc. 70 at 33-39. In response, defendants simply argue that the summary judgment evidence raises a fact issue on whether KTB and KEU ratified the bonds that Crawford approved. Doc. 91 at 33. For the reasons previously discussed, and for the reasons set out at pages 33-39 of plaintiff's opening brief, plaintiff is entitled

---

[4]Defendants argue that the court would be making a credibility determination in reaching this conclusion. Doc. 91 at 21. However, only justifiable inferences are to be drawn in favor of defendants as nonmovants. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). See also Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969)(setting forth the test used in determining whether there is sufficient evidence to submit a case to the jury). No legitimate inference of the existence of the Oral Agreement could be drawn from the summary judgment evidence.

[5]The court need not reach the other arguments made by plaintiff as to these claims. The court does note that there would have been no consideration for the Oral Agreement inasmuch as defendants were already obligated to do the same things pursuant to the Indemnity Agreement.

13

to prevail. Among other things, the record reflects that Mahone was copied on communications regarding the bonds and payment therefor and signed premium checks on behalf of defendants for payment of bonds issued at Crawford's request. See, e.g., Docs. 77-78, App. 1544-1729. Mahone was aware of what Crawford was doing, but continued to employ him until June 9, 2017, long after the alleged damage was done and discovered. Doc. 74, App. 387-88. See Prunty v. Arkansas Freightways, Inc., 16 F.3d 649, 653-54 (5th Cir. 1994)(ratification through retention of employee after employer learned of his conduct). In sum, the conclusory allegations in Mahone's declaration are belied by the record and are insufficient to raise a genuine fact issue for trial.[6]

VI.

Order

The court ORDERS that plaintiff's motion for partial summary judgment be, and is hereby, granted; that plaintiff have and recover from defendants, jointly and severally, the sum of $1,508,984.14 for losses paid through September 25, 2019, plus the sum of $4,500,000.00 to be applied to losses after September 25, 2019, and, to the extent not applied, to be held as

---

[6]Again, the court need not discuss the remaining arguments as to this ground of the motion. It simply notes that defendants' arguments are absurd, e.g., that they are entitled to the benefit of the equitable doctrine of money had and received when there is no evidence that plaintiff was unjustly enriched and holds money that rightfully belongs to counterclaimants. Burrus v. Reyes, 516 S.W.3d 170, 197 (Tex. App.–El Paso 2017, pet. denied).

14

collateral by plaintiff in accordance with the Indemnity Agreement.[7]

The court further ORDERS that by December 17, 2019, plaintiff provide to the court (1) a proposed judgment granting the relief awarded by this memorandum opinion and order, including proposed language related to treatment of the payment of the $4,500,000.00 by defendants by plaintiff consistent with the Indemnity Agreement, and (2) a proposed order granting the remaining relief sought by plaintiff, including how the request for exoneration, were it to be granted, is to be carried out.

The court further ORDERS that counterclaimants take nothing on their counterclaim and that the counterclaim be, and is hereby, dismissed with prejudice.

SIGNED December 9, 2019.

_____
JOHN McBRYDE
United States District Judge

---

[7] Matters remaining to be determined are how to deal with the request for specific enforcement of the books and records provision of the Indemnity Agreement, what sort of accounting should be ordered, what relief is appropriate in light of the request that defendants "exonerate" plaintiff, and the amount of attorney's fees and costs to be awarded.